UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
MARCIA PARKE,

               Plaintiff,

      -against-

ASSIST AMBULANCE,

              Defendant.
----------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-09066 (OEM) (CLP)

ORELIA E. MERCHANT, United States District Judge:

      Plaintiff Marcia Parke ("Plaintiff") commenced this action against her former employer Defendant Assist Ambulance ("Defendant"), asserting claims of gender and racial discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq*. Complaint ("Compl."), ECF 1. Before the Court is Defendant's fully briefed motion to dismiss. For the following reasons, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

    A.    **Factual Background**[1]

      Plaintiff is an African American woman. Compl. ¶¶ 38, 45. On or about June 11, 2018, Defendant hired Plaintiff as an Emergency Medical Technician ("EMT") in its Brooklyn, New York location to transport and provide care to patients and to assist paramedics. *Id.* ¶ 14. Plaintiff alleges that her supervisors "followed her more than they followed other employees" and that her co-workers "always noticed that they were followed more than usual when [they were] working with [her]." *Id.* ¶¶ 16, 17. Plaintiff further alleges that she "did not have to work as hard when

---

[1] For the purpose of ruling on the motion to dismiss, the following facts are accepted as true.

she worked on Saturdays with a white female employee" and that her workload "was significantly reduced when the white female was her partner." *Id.* ¶ 18.

Plaintiff alleges that, on or about December 23, 2020, she had spilled coffee on her shirt on her way to work and that because the shirt was soaked, she removed it. *Id.* at 21. While Plaintiff was at work, her supervisor Jason Cohen ("Cohen") asked her whether she was wearing a work uniform shirt under her jacket. *Id.* Plaintiff was wearing a "low-cut" t-shirt under her jacket, and she responded that she was not wearing a uniform shirt. *Id.* She states that Cohen could have seen that she was not wearing her work uniform, but Cohen nonetheless asked that she unzip her jacket so that he could confirm Plaintiff was not wearing a work uniform shirt and "insisted [that] she unzip her jacket more so he could see more." *Id.* Plaintiff alleges that Cohen asked her to unzip her jacket a "third time" thereby "exposing part of her [upper] breast." *Id.*

Later that day, Plaintiff met with Cohen, Assistant Ambulance employees Carey Peguese, and Carlos[2] where she was informed that she would be suspended. Compl. ¶ 22. Plaintiff alleges she confronted Cohen and told the other supervisors about what happened earlier that day. *Id.* The other supervisors then told her that she was no longer suspended. *Id.* Plaintiff alleges that she never returned to work after that day and instead started working for another employer. *Id.*

Plaintiff contends that Assist Ambulance indicated that she had violated the company's standard operating procedures and required that she complete a protocol update coursework by December 28, 2020, or she would be placed on disciplinary probation for 90 days. *Id.* ¶ 27. She was later advised by another employee that her failure to complete the course work by December 29, 2020, would result in her termination. *Id.* ¶¶ 27-29. Plaintiff did not complete the coursework

---

[2]     Plaintiff did not provide a last name for this individual in her complaint.

2

and "did not answer [Assist Ambulance's] email to her" because "she had no intention of returning to Assist Ambulance." *Id.* ¶¶ 24, 27.

According to Plaintiff, on December 28, 2020, she complained by e-mail to the human resources department of Assist Ambulance about "ongoing harassment" over the preceding months, including that Cohen had sexually assaulted her on December 23, 2020, that she was receiving more calls than other EMT employees working for Assist Ambulance, that her supervisor "clocked her out before [she had] return[ed] to base," and that she was disciplined for arriving late at work while others who also arrived late were not disciplined. Compl. ¶ 26.

Plaintiff asserts that "her employment record was not bad" and in fact Defendant "tried several times to keep [her] on the job." Compl. ¶ 28. Further, she alleges that "Assist [Ambulance] was exaggerating about her employment record because she [had] complained about her check and Cohen." *Id*. Plaintiff alleges that that she left Assist Ambulance on December 23, 2020.[3] *Id.* ¶ 22.

1.  **NYSHDR Complaint**

On October 19, 2021, Plaintiff filed a complaint against Defendant and Jason Cohen[4] with the New York State Division of Human Rights (the "NYSDHR Complaint"), "charg[ing] respondents [Defendant and Cohen] with an unlawful discriminatory practice relating to employment because of sex, in violation of NYSHRL Section 296 . . . [and] Title VII." Compl. Ex. B. at 21. On the form complaint, as the basis of alleged discrimination, Plaintiff only checked "sex" that involved "sexual harassment" and checked "suspended me" for the acts of alleged discrimination. Def's Mot. Ex. B at 2. Plaintiff did not check a box on the form in response to the

---

[3] Plaintiff also asserts that she "was separated from [Defendant] for her failure to comply with" Defendant's company procedures and protocols. Compl. ¶ 25.
[4] In the NYSDHR Complaint, Plaintiff spells Jason Cohen's last name as "Choson." Based on the complaint and motion to dismiss papers, this appears to be a typographical error and refers to the same individual.

3

prompt that if claimant "believe[s] [he or she] were treated differently after [he or she] filed or helped someone file a discrimination complaint, participated as a witness to a discrimination complaint, or opposed or reported discrimination" to check the "retaliation" box and explain "how did [they] oppose discrimination." *Id.*

On the NYSDHR Complaint, Plaintiff provided the following narrative description of the alleged discrimination:

> My name is Marica Parke[.] I worked for Assist Ambulance [for] 2+ years as an [EMT]. I am writing about an incident that happened and I deemed it inappropriate. On the morning of December 23, 2020, while on duty, I was approached by my supervisor Jason [Cohen], who asked me if I had uniform shirt on[.] I told him no, he asked what am I wearing? I explained to Jason that I was wearing a blouse. [H]e then asked me what kind? I told him the kind (blouse). He went asking me what color? I told him gray, [but] he insisted that I unzip my jacket. As I unzip my jacket enough for him to see my blouse[,] [h]e told me to pull down my zipper more[.] I reluctantly unzip[ed] my zip because I felt bullied. He also threate[ne]d me saying 'after this call I needed to go back to the office and I should wait and see[.]' I felt very disrespect[ed] and violated that my boss has used his power to intimidate me and then took me back to base to humiliated me.
>
> While I was back at bas[e], Mr. [Cohen] threatened to suspend me, but after I made him aware of what he was doing [] was wrong and I explained to him how I felt he withdrew his t[h]reat. I love my job[,] however, ethically thinking this doesn't feel right what Mr. [Cohen] did. Until this day I struggled with the fact that I can't even work as an EMT. As a kid I went through similar situation, [and] I feel no one [is] ever being [held] accountable for what they do to me. A meeting was held to discuss the matter and they made me feel like I was wrong. These are some of the reasons I struggle every day as I try to cope with my pass.
>
> To conclude my statement, if Mr. Cohen had asked me why I wasn't wearing my uniform shirt he would have realized that I had my shirt in my car after I spilt coffee on it while driving to work that morning and had to put on a gray shirt I had in my car. Also, when I got to work no supervisor was at work at that time.

Def's Mot. Ex. B at 6.

On June 21, 2023, NYSHDR issued its determination and order after an investigation, finding that there was "NO PROBABLE CAUSE to believe that the respondents ha[d] engaged in or are engaging in the unlawful discriminatory practice complained." Compl. Ex. B at 21.

4

NYSDHR determined that Plaintiff "d[id] not present any allegations that demonstrate [Assist Ambulance] and [Cohen]'s actions toward her in regard to her uniform inspection were because of her sex or were in any way gender-based." *Id.* at 22. NYSDHR instead found that Defendant and Cohen's action toward Plaintiff "regarding checking her uniform was appropriate given that all parties . . . confirmed [that] [Parke's] clothing on that day was not in compliance with [Assist Ambulance's] uniform policy[.]" Compl. Ex. B at 22. NYDSHR states that Plaintiff "d[id] not contest [that] she was not wearing the required uniform." *Id.* at 23. As such, NYDSHR "dismissed [the case before it] as having no probable cause of discrimination on the basis of sex occurred." *Id.* at 23.

### 2. EEOC Complaint

Plaintiff also filed a NYSHDR Complaint with the U.S. Equal Employment Opportunity Commission (EEOC), alleging violations of Title VII. *See* Compl. Ex. B; Def's Mot., Exs. B, C. On September 5, 2023, the EEOC issued a letter to Plaintiff informing her that it declined to further investigate her claims and made no finding as to the merits of her claims. *See* Compl. Ex. A. The letter also informed Plaintiff that the EEOC dismissed her charge and provided her notice of her right to sue in court. *Id.*

### B. Procedural History

Plaintiff initiated this action on December 8, 2023, by filing a pro se complaint under Title VII, Section 1981, and NYSHRL, asserting claims for discrimination and retaliation on the basis of sex and race. *See* Compl. Plaintiff attached as exhibits to her complaint: (1) a "determination and notice of rights" letter issued by the EEOC on September 5, 2023, in which EEOC dismissed her charge and informed her of her rights to sue in court (Exhibit A), and (2) the New York State Division of Human Rights' "determination and order after investigation" informing that the

5

division found no probable cause to her allegations and therefore dismissed her complaint (Exhibit B). Plaintiff seeks compensatory and punitive damages, declaratory judgment, costs, and any other relief by the Court. *Id.*

The Court set a briefing schedule on Defendant's motion to dismiss. *See* April 29, 2024 and May 29, 2024 Orders. An attorney filed a notice of appearance of counsel on behalf of Plaintiff on May 29, 2024. Notice of Appearance on behalf Plaintiff ("Notice of Appearance"), ECF 16.

Defendant filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief can be granted, supported by a memorandum of law, the declaration of Joseph Anci, and accompanying exhibits.[5] Plaintiff opposed the motion to dismiss, Plaintiff's Response in Opposition ("Pl's Opp."), ECF 19, and Defendant filed a reply, Def's Reply, ECF 24.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" FED. R. CIV. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

---

[5] Defendant's Notice of Motion to Dismiss, ECF 21; Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def's Mot."), ECF 22; Declaration of Joseph Anci ("Anci Decl."), ECF 23; Complaint, Anci Decl., Exhibit A ("Def's Mot. Ex. A"), ECF 23-1; NYSDHR Complaint, Anci Decl., Exhibit B ("Def's Mot. Ex. B"), ECF 23-2; NYSDHR's Determination and Order, Anci Decl., Exhibit C ("Def's Mot. Ex. C"), ECF 23-3.

*Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013).

In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). In employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them. *See Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) ("'It is proper for this court to consider the plaintiff's relevant filings with the EEOC' and other documents related to the plaintiff's claim . . . so long as those filings are . . . 'integral to' and 'solely relied' upon by the complaint.") (*quoting Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d. Cir. 2006)) (cleaned up). Likewise, a court may consider exhibits attached to a motion to dismiss that are incorporated in the complaint but not attached to the complaint and which Plaintiff had actual notice without converting the motion into a motion for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

Generally, a court must treat the submissions of pro se plaintiffs "to less stringent standards than formal pleadings drafted by lawyers" and must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Erickson v.*

7

*Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a pro se complaint liberally").

In this case, Plaintiff commenced this action as pro se, *see* Compl., but before the parties briefed the motion to dismiss, an attorney entered an appearance on her behalf in this action and subsequently signed and filed Plaintiff's opposition to Defendant's motion to dismiss. *See* Notice of Appearance; Pl's Opp. at 2, 12. Thus, Plaintiff's opposition papers need not be given the liberal reading afforded a pro se party. *Cf. Ibok v. Sector*, 05-CV-6584, 2006 WL 302336, at *1, n.1 (S.D.N.Y. Feb. 9, 2006) ("The Court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants."); *Rosario v. New York City*, 12-CV-4795, 2013 WL 2099254, at *1-2 n. 1 (S.D.N.Y. May 15, 2013) ("[B]ecause [plaintiff] is proceeding pro se, the Court also considers factual allegations contained in [his] two submissions in opposition to defendants' motion to dismiss, to the extent consistent with the Complaint.").

On a Rule 12(b)(6) motion to dismiss in an employment discrimination case, the three-step burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), is inapplicable. *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (emphasis added) ("[O]ur decision in *Littlejohn* [*v. City of New York*, 795 F.3d 297 (2d Cir. 2015)] makes clear that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss."). This is because *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Thus, a plaintiff need not plead facts or carry a burden of presenting evidence

8

establishing a prima facie case that she might ultimately bear under *McDonnell Douglas* at summary judgment because "the precise requirements of a prima facie case can vary depending on the context," and "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 511, 512 (contemplating the possibility that discovery may produce direct evidence of discrimination, rending *McDonnell Douglas* burden-shifting framework inapplicable at summary judgment). Instead, a plaintiff need only satisfy the plausibility requirement to withstand a motion to dismiss.

Absent direct evidence of discrimination, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see Buon*, 65 F.4th at 79 (holding same). This is not to say that a plaintiff bears no burden at the pleading stage. "At the pleadings stage of an employment discrimination case, a plaintiff has a *minimal burden* of alleging facts suggesting an inference of discriminatory motivation," meaning that "the facts alleged in the complaint must provide at least *minimal* support for the proposition that the employer was motivated by discriminatory intent." *Vega*, 801 F.3d at 85.

## DISCUSSION

### A.     Plaintiff's Retaliation Claims under Title VII, NYSHRL, and Section 1981

#### 1.     Title VII Retaliation Claim Was Not Administratively Exhausted

Defendant argues that the retaliation claim brought under Title VII should be dismissed because Plaintiff failed to exhaust her remedies at the administrative level. *See* Def's Mot. at 4-7. Before bringing suit under Title VII, a plaintiff must first file a timely charge with the EEOC or

9

with a "[s]tate or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e–5(e)(1); *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (holding that a plaintiff asserting Title VII claims must first present these claims in a complaint before EEOC or the appropriate state agency and must subsequently "receive a 'Notice of Right to Sue' letter from the EEOC"). "Exhaustion is ordinarily 'an essential element' of a Title VII claim." *Williams*, 458 F.3d 67 at 70 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). Claims that were not included in EEOC charge or complaint before an administrative agency may nonetheless be asserted in subsequent action in court in only three situations: (1) where the claims "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) where the claims allege retaliation for filing an EEOC charge; or (3) where the claims allege "further incidents of discrimination carried out in the same manner alleged in precisely the EEOC charge." *Carter v. New Venture Gear. Inc.*, 310 F. App'x 454, 455 (2d Cir. 2009); *see also Williams,* 458 F.3d 67 at 70. The first category "is essentially an allowance of loose pleading[,] and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [s]he is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003). Courts must focus "on the factual allegations made in the EEOC charge itself" and whether they "gave that agency adequate notice to investigate" the claims subsequently asserted in federal court. *Williams*, 458 F.3d at 70.

Here, Plaintiff's NYSHDR Complaint, which was also filed with the EEOC, only raised claims of gender discrimination. In that complaint, Plaintiff asserted that the alleged discrimination was based on "sex" and "sexual harassment" and did not check "retaliation" in the form. Upon its review of the NYSHDR Complaint, the EEOC characterized the "basis for discrimination" as "sex" and nowhere concluded that that the events described also supported a claim for retaliation. Def's Mot. Ex. B at 15. The NYSDHR Complaint states that, after Cohen found her not wearing her uniform, he "threatened to suspend [her]" but that he "withdrew his treat." Def's Mot. Ex. B. at 6. Based on that single allegation in the NYSDHR Complaint, it is not reasonable to conclude that this would have prompted an investigation into possible claims of retaliation.

And none of the three exceptions apply here. Plaintiff does not allege retaliation for filing an EEOC charge or further incidents of discrimination. Further, the antidiscrimination provision and antiretaliation provision in Title VII serve different purposes. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006) (explaining that the antidiscrimination provision seeks to "prevent injury to individuals based on who they are" while the antiretaliation provision seeks to "prevent harm to individuals based on what they do"). Thus, these two provisions are "materially different" and therefore are "not reasonably related." *Wilson v. Southampton Hosp.*, 14-CV-5884 (ADS) (GRB), 2015 WL 5124481, at *10-11 (E.D.N.Y. Aug. 28, 2015) (dismissing the plaintiff's Title VII retaliation claims because she did not include the claims in her EEOC charge). Plaintiff has therefore failed to exhaust her Title VII retaliation claim at the administrative level, and because her retaliation claim is not reasonably related to her discrimination claim, the exceptions to the administrative exhaustion requirements are inapplicable. Consequently, Plaintiff's Title VII retaliation claim is dismissed.

### 2. Plaintiff Has Not Stated Retaliation Claims under Section 1981 and NYSHRL

At the motion to dismiss stage, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (internal quotation marks omitted).

Defendant argues that Plaintiff failed to plead both a protected activity and a causal connection between any alleged adverse action and any purported protected activity. Def's Mot. at 5-6. Defendant argues that the only putative protected activity would be the NYSHDR Complaint but that it was filed after Plaintiff was terminated. *Id.* Plaintiff responds by opposing dismissal of her Section 1981 and NYSHRL racial discrimination claims, but does not address her Section 1981 and NYSHRL retaliation claims. *See* Pl's Opp. at 5, 6.

"Numerous courts in this District have held that a party's failure to address an issue in its response to a Rule 12(b)(6) motion 'amounts to a concession or waiver of the argument.'" *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 169 (S.D.N.Y. 2024) (quoting *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021); *see First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392-393 & n.116 (S.D.N.Y. 2002) (considering argument waived where not addressed in opposition brief). Therefore, Plaintiff, who was represented by counsel at the time, has waived any argument that she sufficiently pleaded retaliation claims. Accordingly, Plaintiff's retaliation claims under Section 1981 and NYSHRL are dismissed.

B.      **Plaintiff's NYSHRL Discrimination Claim**

Defendant argues that Plaintiff's discrimination claim under NYSHRL is barred by the "election of remedies" provision under Section 297(9). Def's Mot. at 7. The NYSHRL's election of remedies provision provides that if a person files a complaint with the NYSHDR alleging discrimination, he or she thereby waives the right to assert that claim in court. *See Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995). It reads:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

NYS Executive Law § 297(9).

The provision applies equally in federal and state courts. *See York v. Ass'n of the Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n. 3 (2d Cir.2010) ("[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim.") (internal citation and quotation marks omitted).

Here, the election of remedies bar requires dismissal of Plaintiff's NYSHLR discrimination claims. The NYSDHR Complaint asserted claims based on sex discrimination on the same set of events as alleged in her complaint before this Court. NYSDHR investigated Plaintiff's allegations and found there was no probable cause to believe that Defendant and Cohen's conduct constituted sex discrimination. Consequently, Plaintiff's NYSHRL claims are dismissed.[6]  *See Higgins v.*

---

[6] Plaintiff summarily states that she was denied the opportunity to "present all the facts" by a human rights specialist. Pl's Opp. at 6. But Plaintiff's argument ends there. The Court will not conjure up factual or legal support for a party's assertions in filings when that party is represented by counsel. *See Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434,

13

*NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 189 (S.D.N.Y. 2011) (barring NYSHLR claims under election of remedies because they "emerge[d] from the exact same operative events" brought before NYSDHR); *see also Guardino v. Vill. of Scarsdale Police Dep't*, 815 F. Supp 2d 643, 646 (S.D.N.Y. 2011) (election of remedies bars claims that were "based on the same instance of termination" that were previously charged at NYSHDR complaint).

### C.     Plaintiff's Title VII Discrimination and Hostile Work Environment Claims

Plaintiff asserts a Title VII sex discrimination claim for harassment on numerous occasions, including the December 23, 2020 incident involving Cohen. *See* Compl. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). To state a claim for discrimination under Title VII discrimination, a plaintiff must plausibly allege "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted). To state a claim for hostile work environment, a plaintiff must plead facts that would tend to show the complained of conduct: (1) "is objectively severe or pervasive—that it creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)) (cleaned up).

---

439 n.3 (S.D.N.Y. 2004); (finding that it is not the Court's "responsibility, particularly in a counseled case, to form [P]laintiff's arguments for [her] by researching . . . relevant case law").

Defendant argues that Plaintiff's Title VII sex discrimination claims should be dismissed because Plaintiff failed to allege how her sex played any role in her termination for violation of company policy and because Plaintiff did not allege "a single sexist or gender-related comment by anyone at Assist [Ambulance] that could plausibly be read as animus towards her sex." Def's Memo at 11.  Therefore, Defendant contends, her membership in a protected class, alone, is insufficient to state a discrimination claim.  *Id*.  Defendant also argues that Plaintiff's hostile work environment claim should be dismissed because a single incident—Cohen's request to unzip her jacket—was not sufficiently severe or pervasive to sustain such a claim.  *Id.*

Plaintiff's opposition does not address Defendant's argument for dismissal of her Title VII claims and therefore Plaintiff has abandoned these claims. *See Felix v. City of New York*, 344 F.Supp.3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); *see also Flanag an v. Girl Scouts of Suffolk Cnty., Inc.*, 21-CV-7513, 2023 WL 6594885, at *8 (E.D.N.Y. Aug. 25, 2023) (finding that plaintiff's failure to address an argument in opposition to defendants' motion to dismiss "amounts to a concession of th[e] argument").

Moreover, Plaintiff has failed to sufficiently allege facts to plausibly support a minimal inference of discrimination.[7]  Based on "the totality of the circumstances, including the severity of the discriminatory conduct," the allegations do not support a finding of hostile work environment that was so severe or pervasive. *See Littlejohn*, 795 F.3d at 321.  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Bermudez v. City of N.Y.,* 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).  Indeed, to sustain a hostile work environment claim, "incidents

---

[7] As stated in Legal Standard Section, *McDonnell Douglas* framework does not apply on a motion to dismiss.  As such, Defendant's argument that Plaintiff failed to a make a prima facie case of discrimination is inapposite.

must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted). Here, Plaintiff has alleged a single "[i]solated act[], unless very serious, do[es] not meet the threshold of severity or pervasiveness." *Id. But see Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir.2000) (vile and sexually explicit verbal abuse of a female firefighter that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire scenes).

### D. Plaintiff's Racial Discrimination Claim under Section 1981

Section 1981 provides "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C.S. § 1981(b). Section 1981's protections apply to employment relationships. *See Patterson v. Cty. of Oneida*, 375 F.3d 206, 224-25 (2d Cir. 2004). "To state a claim under Section 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citations omitted); *accord Raymond v. City of New York*, 317 F. Supp. 3d 746, 760 (S.D.N.Y. 2018).

16

Here, Plaintiff states that she is an African American EMT officer employed by Defendant. She alleges that other employees "did not like working with [her] because they had to work harder when they worked with her[,]" that her co-workers have "told [her that] their workload was always heavier when they worked with [her]." Compl. ¶ 16. In her opposition, Plaintiff asserts that her complaint "states that she was discriminated against[,]" that "other workers did not want to work with her because the load was much heavier with her[,]" and that "her supervisor clocked her out before she returned to base and her job day ended." Pl's Opp. at 6. Plaintiff therefore argues that "[a] jury should decide" whether she was discriminated against and goes on to provide a litany of case law and summary on the McDonnell Douglas decision without articulating why, in light of this legal authority, her claim should not be dismissed. *See* Pl's Opp. at 6-11. "A skeletal argument, unsupported by relevant authority or reasoning, is merely an assertion which does not sufficiently raise the issue to merit the court's consideration." *Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 162, n. 1 (E.D.N.Y. 2005) (citations omitted); *see also Painting v. City of Rochester*, 2022 WL 16856662, at *3 (W.D.N.Y. 2022) (declining "to address . . . unsupported and skeletal arguments . . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work"). Thus, Plaintiff has abandoned her claim.

Even if Plaintiff had properly opposed dismissal of her disparate treatment claim, the claim still must fail. Plaintiff has not alleged any facts from which the Court could infer that racial animus was the motivating factor for Defendant's actions, and she has not alleged, even in a conclusory fashion, that the actions were motivated by race. *Jenkins v. Arcade Bldg. Maint.*, 44 F.Supp.2d 524, 528 (S.D.N.Y.1999); *Dickerson v. State Farm Fire & Cas. Co*, 95-CIV-10733 (MBM), 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial

17

animus. The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus."). Further, "a complaint that identifies other possible motives"—here, Plaintiff's violations of company procedures—"combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999)

Plaintiff's allegations that she was treated less favorably than her white counterparts also fail to support a plausible inference of disparate treatment. Where a plaintiff alleges differential treatment, she may establish an inference of discrimination by alleging that "[s]he was treated less favorably than similarly situated employees of other races[.]" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014).[8] However, "it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019). The "plaintiff must . . . identify at least one comparator to support a minimal inference of discrimination" to survive a motion to dismiss. *Goodine v. Suffolk Cnty. Water Auth.*, 14-CV4514 (JS) (ARL), 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017). The complaint lacks any factual basis from which the Court could reasonably infer that the relevant white employee was similarly situated to Plaintiff in material terms. While "[a]n inference of discrimination may be supported at this stage by showing more favorable treatment of an employee not in the plaintiff's protected class[,]" *Pollock v. Shea*, 568 F. Supp. 3d 500, 509 (S.D.N.Y. 2021), the only fact that Plaintiff provides regarding the comparator is that she is a "white female employee who drove a Jeep" and with whom Plaintiff partnered on Saturdays. Compl. ¶ 18. But the complaint is otherwise silent

---

[8] To do so, "a plaintiff must allege that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Brown*, 756 F.3d at 230 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). But allegations of "adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." *Littlejohn*, 795 F.3d at 312.

as to the specifics on the comparator—that is, how the comparator is similarly situated to Plaintiff, what her responsibility was, and who that person is. Aside from the statement that when she worked with a "certain" "white female employee" her workload was reduced, Plaintiff does not allege any other facts that would elevate her allegations beyond that of a "naked assertion." *See, e.g., Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 612 (E.D.N.Y. 2017) (dismissing Title VII disparate treatment claims because "Plaintiff failed to demonstrate that she was similarly situated in all material respects to the male employees she identifies") (quotations omitted); *Goodine*, 2017 WL 1232504, at *4 ("Plaintiff refers to a generic class of white probationary employees, which is insufficient even at the pleadings stage."). Consequently, Plaintiff's racial discrimination claim under Section 1981 is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Assist Ambulance's motion to dismiss is granted, and Plaintiff's complaint is hereby dismissed. The Clerk of Court is directed to close this action.

**SO ORDERED.**

/s/
ORELIA E. MERCHANT
United States District Judge

February 17, 2025
Brooklyn, New York